UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| FREDA SHEPHERD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-151-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, | ) | **AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The plaintiff, Freda Shepherd ("Shepherd"), challenges the Commissioner of Social Security's ("Commissioner") denial of her application. She argues that the Commissioner's decision was not supported by substantial evidence, did not consider the opinions of her treating physicians, and did not take into account her subjective complaints. Because the Commissioner's decision is supported by substantial evidence and applied the proper legal standards, the Court denies Shepherd's motion for summary judgment, R. 19, and grants the defendant's, R. 20.

### BACKGROUND

Shepherd was 48 years old when she filed this application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Transcript ("Tr.") at 121. From 1992 to 1995, she worked as a grocery store cashier. *Id.* at 146. In 1995, Shepherd stopped working temporarily to care for her sick husband. *Id.* at 33. Her anxiety problems also began at that time. *Id.* From 1999 to 2004, Shepherd worked on an assembly line at a factory packing cookies. *Id.*

at 146. She also worked as a cook in various locations, though the dates of this employment are unclear. *Id.* at 206. She stopped working on September 2, 2004, because her nerves were so bad she could not get along with people. *Id.* at 145. According to Shepherd, her heart disease, gout, and nerve problems keep her from returning to work. *Id.*

On September 13, 2004, Shepherd filed her first application for SSI and DIB. Administrative Law Judge Joan A. Lawrence denied the claim on March 24, 2006, after a hearing. *Id.* at 77-84. After the Appeals Council denied her request for review, *id.* at 89-92, Shepherd took no further action.

Shepherd filed the application at issue for SSI and DIB on July 25, 2006, alleging disability beginning September 2, 2004. *Id.* at 121-125. She submitted medical records documenting her treatment since the previous denial. Since December 2005, Shepherd has seen Physician Assistant Crystal Smith ("P.A. Smith"), who works with Shepherd's primary care physician at Clay County Medical Center. *See id.* at 218-34. P.A. Smith has noted Shepherd's pain in her lower back, left leg, and right arm and elbow, and her limited range of motion in her upper extremities. *Id.* at 220, 223, 227.

On October 18, 2006, state medical consultant Dr. Edward Stodola was hired to review Shepherd's psychiatric records. *Id.* at 252-65. He found that, although Shepherd suffers from affective disorders and anxiety-related disorders, her impairments are not severe. *Id.* at 252. He noted that she has only a mild restriction of activities and mild difficulties in maintaining social functioning, concentration, persistence, and pace. *Id.* at 262. On November 20, 2006, medical consultant Jonathan Garrison completed a physical residual functional capacity ("RFC")

2

assessment of Shepherd. *Id.* at 266-73. He noted that there was no new and material evidence since Shepherd's previous denial of benefits. *Id.* at 271. Based on her medical records, Garrison determined Shepherd could occasionally lift fifty pounds, frequently lift or carry twenty-five pounds, and stand or sit for six hours out of an eight-hour work day. *Id.* at 267.

At the end of 2006, P.A. Smith sent Shepherd to Dr. William Brooks for a neurosurgical consultation. *Id.* at 279-80. Dr. Brooks ordered various tests, and he noted that Shepherd's pain treatment with Lortab seemed reasonable. *Id.* In a letter dated January 11, 2007, Dr. Brooks wrote that Shepherd's diagnostic results were consistent with pain from gout, but that she had no abnormalities requiring surgical intervention. *Id.* at 275. Dr. Brooks could not identify the source of Shepherd's lower back pain. *Id.* at 276. He made Shepherd a pain management appointment "given the fact that [he thought] she will have chronic disabling pain." *Id.* at 275. A February 5, 2007, report shows that Shepherd went to Spine & Brain Neurological Center in London, Kentucky, for an initial pain management consultation. *Id.* at 324. Dr. Richard Lingreen reviewed Shepherd's 2006 MRI and identified degenerative disc disease. *Id.* at 325. He prescribed Lortab and Zanaflex. *Id.* On May 11, 2007, Dr. Lingreen ordered a pain patient profile, which is part of the record. *Id.* at 319-23, 326. In September 2007, he observed that Shepherd's disc problems were degenerative. *Id.* at 328. At no time did Dr. Lingreen assess Shepherd's functional capacity.

Dr. Jan Jacobson completed a mental RFC on March 22, 2007. *Id.* at 282-300. He found that Shepherd's new medical evidence was not material and did not change her previous RFC determination. *Id.* at 284. Dr. Jacobson did find Shepherd to suffer from mood alterations and

3

an anxiety-related disorder. *Id.* at 290, 292. She identified moderate limitations in Shepherd's social abilities, such as: the abilities to understand, remember, and carry out detailed instructions; to work in coordination with others without being distracted; and to act appropriately with the general public and respond to changes in the work setting. *Id.* at 282-83. On March 26, 2007, Dr. Jorge Baez-Garcia reviewed Shepherd's records and adopted Jonathan Garrison's RFC assessment. *Id.* at 301-09.

On April 30, 2007, Shepherd reported to the Cumberland Family Behavioral Health Center for a psychiatric consultation. *Id.* at 313-16. Dr. Rachel Vasquez referred Shepherd for individual psychotherapy. Her records do not show any follow-up.

The Social Security Administration denied Shepherd's application initially on November 22, 2006, and then again upon reconsideration on April 3, 2007. *Id.* at 98-101; 104-06. Thereafter, Shepherd filed a written request for a hearing on April 12, 2007. *Id.* at 110. On January 9, 2008, Administrative Law Judge Frank Letchworth ("ALJ") conducted a hearing. *Id.* at 24-62. Shepherd and vocational expert Dr. James Miller each testified. Shepherd explained her past work. At the cookie factory, Shepherd regularly lifted bundles of unassembled boxes weighing seventy-five to eighty pounds. *Id.* at 52. While working at the factory she experienced arm and leg pain and anxiety attacks. *Id.* at 34-35. Shepherd also discussed changes to her medical problems since the 2006 hearing. She now has pain in her shoulders and lower back problems that affect her left leg. *Id.* at 36-37, 51. She stopped going to Dr. Lingreen for pain management when her medical insurance ran out. *Id.* at 38. Shepherd still takes Lortab and Diflocanec for pain. *Id.* at 48. She also suffers from insomnia due to her anxiety; she is only

4

able to sleep four to five hours per night. *Id.* at 41-42. Additionally, Shepherd's medication for her mental health issues has increased. She takes a pill at night for anxiety and Xanax three times per day. *Id.* She also takes medication for a leaky heart valve, breathing, high blood pressure, diabetes, and gout. *Id.* 43-49.

Dr. Miller classified Shepherd's previous work as a cookie packer as light and unskilled based on her application, *id.* at 59, where she stated that she lifted a maximum of twenty pounds, *id.* at 147. Based on her hearing testimony of lifting seventy-five to eighty pounds, however, the work would be very heavy and unskilled. *Id.* at 59. Her work as a cashier is light and semi-skilled and work as a cook is medium and skilled. *Id.* The ALJ presented Dr. Miller with three different hypothetical individuals and asked whether those individuals could perform Shepherd's previous work. *Id.* at 60-61. The first hypothetical had the following physical restrictions (among others): medium exertion and limited but satisfactory ability to deal with the pubic, maintain concentration and attention, work closely to others without distractions, and respond appropriately to changes in a work setting. *Id.* at 60. Dr. Miller responded that the individual could work as a cashier and as a pizza maker. An individual with added climbing, crawling, stooping, bending, and crouching restrictions could still work as a cashier or a pizza maker. *Id.* Finally, an individual who, as a result of fatigue or loss of sleep, was off-task approximately twenty percent of a workday on a regular basis would not be employable. *Id.* at 60-61.

## THE ALJ'S OPINION

Following the hearing, the ALJ issued a decision on April 21, 2008. *Id.* at 15-23. He found that, although Shepherd had the severe impairments of back disorders, gout, major

5

depressive disorder, and anxiety disorder, she was not under a disability. In evaluating Shepherd's claim of disability, the ALJ conducted the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. *Id*. at 16-23; *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The ALJ was bound by the March 24, 2006, denial of Shepherd's previous application without evidence that her condition had changed. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) (holding that "[a]bsent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ"). The first ALJ determined that Shepherd was not disabled based on her heart problems and depressive disorder. Tr. at 77-84. She found that Shepherd could perform medium work except lifting more than fifty pounds occasionally or twenty-five pounds infrequently and could not sit, stand, or walk more than six hours out of an eight-hour day. *Id.* at 82. The first ALJ also thought Shepherd had a limited but satisfactory ability to deal with the public, maintain attention and concentration, and work close to others without distraction. *Id.*

First, ALJ Letchworth found that Shepherd has not engaged in substantial gainful activity since March 25, 2006. *Id*. at 17. Second, he found Shepherd's back disorders, gout, major depressive disorder, and anxiety disorder to be severe impairments. *Id*. at 17-18. Third, he concluded that the impairments did not meet or medically equal any listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 19-20. The ALJ then determined Shepherd's RFC. *Id.* at 20-22. He found that there had been no change in Shepherd's condition since the prior hearing decision—Shepherd could still perform medium work. Fourth, the ALJ stated that Shepherd could perform her past relevant work as a cashier and cook. *Id.* at 22. Thus, he did not reach

the fifth step of identifying alternative employment.

On April 21, 2008, Shepherd appealed the ALJ's decision. *Id.* at 10-11. With her appeal, she submitted additional evidence from treating physician Dr. Emmanuel Yumang. *Id.* at 9. On April 2, 2009, the Appeals Council declined to review the ALJ's decision, *id.* at 1-3, at which point the ALJ's decision became the final decision of the defendant. Shepherd now seeks judicial review.

**DISCUSSION**

Shepherd broadly asserts that the ALJ's determination of her RFC is not supported by substantial evidence. She also argues that the ALJ erred by failing to discuss or discredit her complaints of pain. Finally, she claims that the ALJ failed to consider the opinion of her treating physicians. Shepherd's arguments are without merit.

Judicial review is limited to determining whether substantial evidence supported the ALJ's ruling. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Social Security Act provides that findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. *Id.* (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

**I. The ALJ's RFC determination**

Shepherd argues that substantial evidence does not support her RFC determination. She erroneously states that the ALJ assigned her an RFC of light work (her RFC is for medium

work), and argues that her conditions prevent her from performing work at that level. Regardless, Shepherd is incorrect.

Substantial evidence supports the ALJ's RFC findings. The ALJ carefully addressed all of the medical evidence to determine that Shepherd can complete medium exertional work. *Id.* at 17-20. No treating physician submitted a medical assessment form of Shepherd's functional capacity. The state experts that examined Shepherd's medical records found no change since the last determination that Shepherd was not disabled, *see id*. at 264, 271, 284, or no limitations at all, *id.* at 303-06.

Shepherd contends that the vocational expert Dr. Miller testified she would not be able to work because she is off-task twenty percent of the time due to insomnia. R. 19 at 3. But that is not what Dr. Miller testified. The ALJ posed a hypothetical about whether an individual off-task for twenty percent of the time would be able to work. Dr. Miller responded that she would not. Tr. at 60-61. Yet, Shepherd submits no evidence that she fits this hypothetical. Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays [Shepherd's] individual physical and mental impairments." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). Although Shepherd said she suffered from insomnia and once mentioned the complaint to a physician, tr. at 212, her medical records do not show any treatment for the condition. To the contrary, records from the Cumberland Family Behavior Clinic gave Shepherd a global assessment of functioning (GAF) of 55. *Id*. at 315. According to the ALJ, the American

8

Pyschiatric Association defines a GAF of 51-60 as only from moderate difficulty in social, occupational, or school functioning. *Id.* at 22. Thus, substantial evidence supports the ALJ's finding that Shepherd can perform medium work.

## II. Shepherd's subjective complaints

Shepherd argues that the ALJ did not consider her subjective complaints when determining her RFC. *Id.* at 7-8. She is incorrect. The ALJ made a proper credibility determination about Shepherd's testimony. Specifically, in assessing her testimony's credibility, the ALJ needed to decide whether either: (1) the objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990) (quoting *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).

The ALJ determined that Shepherd's medical impairments *could* reasonably be expected to produce her symptoms of pain. Tr. at 21. However, Shepherd's statements as to the severity of her pain were inconsistent with the medical evidence in the record. *Id.* Her monthly visits to P.A. Smith showed she generally responded well to her conservative pain treatment. *See id.* at 214-37. Her back pain is managed with medication that she states brings it from a "ten" to a "six." *Id.* at 45. Effectiveness of medication influences the weight given to Shepherd's complaints of pain. *Blacha*, 927 F.2d at 231; 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Shepherd does not wear a back brace, use an ambulatory aid, or participate in physical therapy. She went to pain management for a short period of time but stopped; she never received the

9

injections Dr. Lingreen recommended. As to her psychological impairments, Shepherd has also not complied with medical treatment for these conditions. "[I]n order to get benefits, a claimant must follow the treatment prescribed by the claimant's physician." *Hall-Thulin v. Comm'r of Soc. Sec.*, No. 96-1940, 1997 WL 144237, at *1 (6th Cir. Mar. 27, 1997) (citing 20 C.F.R. § 404.1530(a)). Since the last denial of benefits, the record shows only one visit to the Cumberland Family Medial Center. All of these things undercut her description of debilitating pain and anxiety.

### III. Treating physician evidence

Shepherd argues that the Commissioner did not fully consider evidence from her treating physicians. R. 19 at 4. Specifically, she contends that the Commissioner ignored Dr. Yumang and Dr. Brooks' opinions that she is disabled. *Id.* at 4-5. These arguments also fail.

Dr. Yumang's letter was never in front of the ALJ. Though the Appeals Council considered the new document, it declined to review the ALJ's findings. "Where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *see* 42 U.S.C. § 405(g). Though the district court cannot consider new evidence, it can remand the case for further proceedings if Shepherd shows that "the evidence is **new and material** and that there was **good cause** for not presenting the evidence in the previous proceedings." *Cline*, 96 F.3d at 148. Since the letter is dated June 8, 2008, after the hearing and the appeal, it would qualify as new evidence. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)

10

(defining new evidence as "'not in existence or available to the claimant at the time of the administrative proceeding'" (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

Even though the evidence is new, however, it is not material. To be material, Shepherd "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). That is not the case. First, it is not clear that Dr. Yumang is Shepherd's treating physician. Dr. Yumang writes only that "Ms. Shepherd is currently a patient of this practice." Tr. at 329; *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." (citing *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983))). Shepherd does not explain the details of her treatment by Dr. Yumang. It is not clear whether she is a patient of Dr. Yumang, another doctor in his practice, or how many times she has seen Dr. Yumang.

Even if Dr. Yumang were a treating physician, the ALJ could ignore his letter. Dr. Yumang only wrote that Shepherd is currently disabled due to her listed illnesses. Tr. at 329. This opinion is conclusory of the dispositive issue in the case. "Conclusory medical opinions are properly discounted as only the Commissioner can make the ultimate determination of disability." *Gant v. Comm'r of Soc. Sec.*, No. 09-5623, 2010 WL 1378427, at *2 (6th Cir. Apr. 7, 2010) (citing 20 C.F.R. § 404.1527(e)(1)). Further, like in *Sizemore*, Dr. Yumang's opinion is not

supported by any treatment records and is inconsistent with the record as a whole. Giving controlling weight to a physician's opinion is only appropriate when the medical opinion "is not inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. § 404.1527(d)(2); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). As already discussed, the weight of the evidence does not support a finding of disability. Therefore, there is no reasonable probability that the Secretary would have reached a different disposition based on Dr. Yumang's letter.

Shepherd also argues that the ALJ gave insufficient weight to Dr. Brooks' report, which stated he believed Shepherd would have chronic disabling pain. Tr. at 275. The ALJ also considered Dr. Brooks' opinion in detail. *Id.* at 18. More importantly, Dr. Brooks was not a treating physician. *Atterberry v. Sec'y of Health and Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989) (the doctor "is not a treating physician given the fact that he evaluated the claimant on only one occasion."). Dr. Brooks is a neurosurgeon who only saw Shepherd once; he ordered neurological tests for P.A. Smith and did not recommend surgery. "[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006). And even if he was a treating physician, his statement that Shepherd would have chronic disabling pain is a conclusory medical opinion going to the ultimate determination of disability. *Gant*, 2010 WL 1378427, at *2. Thus, the ALJ properly considered Shepherd's medical evidence.

Finally, Shepherd contends that the ALJ did not discuss the records from Cumberland, tr. at 313-16, or a pain profile from Dr. Lingreen, *id.* 319-23, at all. R. 19 at 9. This is simply not

the case. The ALJ noted that at Cumberland Family Medial Center, Shepherd was assigned a global assessment of functioning at 55, which means that she has no greater than moderate limitations in social interactions. Tr. at 22; 313. He also observed that Dr. Lingreen offered pain injections and that Shepherd declined them. *Id.* at 19. The ALJ's opinion shows that he considered these records, *id.* at 18-19, and that they support his finding.

## CONCLUSION

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment, R. 20, is **GRANTED**, and Shepherd's motion for summary judgment, R. 19, is **DENIED**.

This the 9th day of August, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge